MILLER, Judge
(dissenting).
I respectfully submit that the question before this court is not “whether the plaintiff incurred a post-traumatic neurosis as a result of” her March 29, 1966 work con *607 nected accident. Instead, it is: Did the trial judge commit manifest error in finding that plaintiff’s traumatic neurosis, if any, was not related to this accident? I do not find manifest error and would therefore affirm.
None of the cited cases reverse a trial court on the basis of one psychiatric examination conducted 51 months post accident or 38 months after compensation was terminated. None involve facts where there is a more recent trauma (an operation for an unrelated disability in this case) to which the neurosis could be related.
Although this suit was filed on February 26, 1968, the allegation that plaintiff was suffering from traumatic neurosis was not filed until September 7, 1971.
The 57 year old plaintiff was examined for “about one hour” by the psychiatrist on July 20, 1970. Although the psychiatrist did not testify until thirteen months after his examination, he did not examine her a second time.
The psychiatrist testified that he based his diagnosis on history and complaints related by the patient and that if this was inaccurate, he could not be sure of his diagnosis. Tr. 92. At Tr. 91 he admitted that if plaintiff was “. . . very actively and highly engaged and does very extensive sewing . . .” then he “. would question the veracity of the rest of her history as well.” It was established at trial that after the accident, plaintiff sewed clothes “ . . for so many people that I don’t remember.” Tr. 176. She averaged sewing several dresses every week. She explained that while she could use a sewing machine, she could not cut patterns or handsew.
The lay witnesses on which the majority “ . . . placed heavy emphasis '. . . ” are not so impressive to me. The majority did not note that the named lay witnesses are plaintiff’s daughter, daughters-in-law (daughters of plaintiff’s 76 year old husband whom she married in July 1970), and a cousin. Neither does the majority note that each of these witnesses admitted that she did not help plaintiff during the entire five year period which plaintiff has maintained her business as a seamstress.
Dr. L. Richard, Jr. examined plaintiff on February 28, 1969 and diagnosed a thoracic outlet syndrome. This was totally unrelated to the accident, yet this disability caused less blood supply to plaintiff’s right (the disabled) hand. Plaintiff’s complaints were accounted for by this disability which was surgically corrected. She was fully recovered from the thoracic outlet syndrome by June 1969 and her physician carefully explained that this trouble was not related to the burn she received in 1966. Nevertheless plaintiff continued to complain that all problems were related to the burn accident. Tr. 47.
The majority is “. . . impressed with the straightforward manner of Mrs. Royer’s recitals, as well as the sincerity, honesty, and truthfulness implicit therein.” I suggest that the trial judge was not, and he saw and heard the witnesses. The trial judge may have been more impressed with Dr. Dunning’s testimony that in November of 1966 plaintiff had callouses in her right hand. Tr. 123.
I do not find manifest error in the trial court’s rejection of the psychiatrist’s opinion because it was based on one one hour examination made 51 months post accident and some 39 months after the treating physicians concurred that plaintiff was completely recovered from the injury. This result is supported by the fact that most of plaintiff’s complaints were explained by a disability, unrelated to the accident, which was surgically corrected some fourteen months before the psychiatrist’s examination.
I respectfully dissent.